UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ERIKA QUINONES | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Cause No. 3:22-cv-00021-DB |
| JOHN R. ARMENDARIZ, in his official capacity as Detective with the El Paso Police Department, and DAVID CAMACHO, in his official capacity as Detective with the El Paso Police Department, | § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff and files this Second Amended Complaint against John R. Armendariz and David Camacho, in their official capacities, and in support thereof says:

**PARTIES**

1. Erika Quinones (Ms. Quinones) is a resident of Hermiston, Oregon.

2. Defendant John R. Armendariz is a natural person and citizen and resident of the State of Texas. He is sued in his official capacity as a Detective with the City of El Paso. Defendant has appeared in this matter and may be served with this pleading through his attorney of record.

3. Defendant David Camacho is a natural person and citizen and resident of the State of Texas. He is sued in his official capacity as a Detective with the City of El Paso.

1

Defendant has appeared in this matter and may be served with this pleading through his attorney of record.

## JURISDICTION

4. Quinones brings this cause of action pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

5. Quinones additionally brings this cause of action pursuant to the common law and constitution of the State of Texas.

## VENUE

6. The events forming the basis of this suit occurred, and venue is proper, in El Paso County, Texas.

## NATURE OF SUIT

7. Plaintiff will show that:

a. Defendants under color of law have subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the Constitution and laws of the United States in violation of 42 U.S.C. § 1983 thereby violating Plaintiff's Fourth Amendment right to be free from unlawful search and seizure as guaranteed by the Fourth and Fourteenth Amendments and Article I, Section 9 of the Texas State Constitution.

## BACKGROUND

8. On or about October 29, 2019, El Paso Police Department Crimes Against Persons ("CAP") officers Sgt. David Camacho and Det. John R. Armendariz received and investigated a complaint report of an alleged false statement purported made by Ms. Quinones (of August 31, 2019) to special investigators with the Social Security

Administration. Sonya Wolff, Ms. Quinones' former sister-in-law, made the complaint.[1] Sgt. Camacho took the initial report and assigned the case to Det. Armendariz.

9. The next day, October 30, 2019, Det. Armendariz swore out and filed one "Complaint Affidavit" under Offense Report #: 19-2302155 for the offense of "False Report to Federal Special Investigator" which alleged:

i) "[O]n or about August 31, 2019, Erika Quinones, did then and there with intent to deceive, knowingly makes [sic] a false statement that is material to a criminal investigation and makes [sic] the statement to a federal special investigator conducting the investigation[]";

ii) Sonya Wolff claimed "she had been subject to numerous inquiries from the US Social Security Administration. The inquiries were to investigate allegations of the misuse of monetary benefits from Reporter's deceased brother [William Wolff]";

iii) William Wolff "was murdered, and the murder investigation is documented in EPPD case 15-339142";

iv) "The complaints that [the SSA] received detailed the misuse of … William Wolff's benefits, and the complaint received by [SSA] detailed '[t]he paternal aunt [Sonya Wolff] of H.W. (6 year old female child) is receiving benefits that need to be awarded to Erika Quinones … [t]he paternal aunt is not the legal guardian of H.W. and is misusing the monetary benefit, and should not be receiving the benefit.'";

v) "The SSA initiated an internal investigation, in which the Reporter fully complied. [She] was awarded temporary custody of H.F. [sic] from January … 2016 - January 2019, and was awarded full guardianship of H.W. on January 23, 2019. The Reporter has filed affidavits and petitions to legally adopt the child, H.W., with a final hearing scheduled for November 18, 2019. The DEFENDANT [Ms. Quinones] relinquished her parental rights over the child and pled guilty to Aggravated Kidnapping, Cause No. 2016[0]D01013 filed in Texas District Court 346th[]".

vi) "Furthermore, the DEFENDANT signed and filed a notice of relinquishment of parental rights. The affidavit was filed under Cause No. 2013DCM6818. The DEFENDANT then and there agreed and signed voluntarily. Additionally the Defendant initialed subsequent paragraphs in said affidavit, indicating the DEFENDANT read and agreed to each.

---

[1] Sonya Wolff is referred to in the Complaint Affidavit as "Reporter."

3

      Within the affidavit the DEFENDANT initialed a paragraph that notes; the REPORTER is the Guardian of the Estate of H.W.

vii) "The affiant [Det. Armendariz] has reason to believe that the DEFENDANT has reasonable knowledge of the relinquished rights based on said affidavit. Therefore, the complaints being filed by the DEFENDANT to [SSA] are clearly fictitious and are made in efforts to deceive and initiate an investigations [sic] based on consistent lies the DEFENDANT has fabricated. The complaints made by the DEFENDANT [to SSA] were on August 31, 2019, while Cause No. 2013DCM6818 and Cause No. 2016[0]D01013 were filed against August 12, 2019 at which point the DEFENDANT had reasonable knowledge the complaints were demonstratively false."

viii) "Crimes Against Persons Investigators discovered that the DEFENDANT called in the complaint to report the false information to [SSA], triggering an Administrate [sic] and Criminal Investigation against the Reporter. A follow up email was submitted from the Defendant's email, describing in further detail the false allegations against the Reporter. The State of Texas is investigating the false allegations in conjunction with Office of the Inspector General case number Q19441365.

ix) "The [EPPD] has jurisdictional responsibility due to the allegations made against the REPORTER, a City of El Paso Resident. The US Social Security Administration Office, located at 11111 Gateway West, City/County of El Paso, Texas was forwarded the complaint made by the DEFENDANT and began the investigation into the REPORTER at which point the [EPPD] was alerted and a consequent investigation was initiated. The complaint from the [SSA] was sent to the [EPPD] as the DEFENDANT was a party to a violent offense that … was investigated, presented and prosecuted by the [EPPD] and the El Paso County District Attorney's Office. The False Statement to Federal Special Investigators are an attempt to seek monetary gain, and the false statements are material to the investigation into the death benefits of William Wolff, the DEFENDANT'S ex-husband, and the father of H.W."

x) This Offense occurred in the City/County of El Paso and against the peace and dignity of the State.

Ex. A, Complaint Affidavit of John R. Armendariz, dated October 30, 2019.[2]

10.    The Complaint Affidavit was sworn to before Magistrate Sara Priddy on October 30, 2019 (and reflects a "Date/Time: 10/30/2019 12:27:58"). *Id*.

---

[2] The exhibits referred to herein were originally attached to Plaintiff's First Amended Original Petition. [ECF No. 1].

11. Armendariz's assertion Ms. Quinones "was a party to a violent offense that … was investigated, presented and prosecuted by the [EPPD]" referred to EPPD Crimes Against Persons' murder investigation of William Wolff (EPPD Case No. 15-339142) (on which Camacho and Armendariz were the lead investigators), wherein Ms. Quinones' father, Javier Quinones, was charged (on January 23, 2016) and ultimately convicted (on October 27, 2017) after jury trial. Then Assistant District Attorney James Montoya prosecuted the case over which Judge Angie Barill presided. Det. Camacho, by Supplemental Report in the case, dated February 4, 2016, concluded Ms. Quinones was neither a party to *nor in any way* implicated in the murder: "The investigators proceed[ed] to meet with Erika Quinones, who provided a witness statement for the case, solidifying Javier's confession as to when he re-entered the country to murder William Wolff. There was no evidence that Javier [Quinones] acted with another and in his confession he did not implicate anyone else." Ex. B, Supplemental Report of David Camacho, dated February 4, 2016.

12. Also on October 30, 2019 (at 4:19 p.m.), Montoya filed his "State's Motion to Revoke Probation" in Cause No. 20160D01013. The Motion to Revoke alleged, in pertinent part:

**I.**

i) "That on August 12, 2019, the Defendant was found guilty by a jury in the above-styled cause, the Court entered a finding of Guilt, assessed a term of 10 YEARS CONFINEMENT IN THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and suspended the sentence and placed the Defendant on Community Supervision for 10 YEARS under the terms and conditions outlined in the attached Terms and Conditions of Community Supervision."

**II.**

5

ii) "That on or about August 31, 2019, in El Paso County, Texas, the Defendant violated <u>Condition a</u> by unlawfully committing the offense of FALSE REPORT TO A FEDERAL SPECIAL INVESTIGATOR.
iii) Therefore, the Defendant's probation should be revoked in the above-styled cause.

### III.

WHEREFORE, the State prays that capias issue, that the Court revoke the Defendant's probation, and sentence the Defendant to serve the original sentence assessed.

Ex. C, State's Motion to Revoke, dated October 30, 2019, (emphasis in the original).

13. The original offenses referred to by Montoya in the Motion to Revoke were Interference with Child Custody and Aggravated Kidnapping for which Ms. Quinones was charged on December 16, 2015 (EPPD Case No. 15-348082) related to the taking of her child, H.W., out of El Paso County, Texas in March 2015 contrary to an order(s) issued in a child custody case. Ms. Quinones stood trial for these charges from August 5, 2019 to August 12, 2019 and was found guilty on August 9, 2019. On August 12, 2019, the State offered Ms. Quinones ten (10) years probation in exchange for her plea of guilty and her agreement to relinquish all parental rights to H.W.

14. On October 30, 2019, Judge Barill issued a capias for the arrest of Ms. Quinones. *Id*.

15. Ms. Quinones was taken into custody in Hermiston, Oregon on November 1, 2019.

16. On November 4, 2019, Ms. Quinones filed her Motion to Set Bond alleging, among other things, that she had theretofore fully complied with the conditions of her community supervision, had previously attended court hearings in the underlying case

despite residing outside of El Paso County (and the State of Texas), and was presently at risk of losing her employment should she remain in custody.

17. On November 5, 2019, Judge Barill considered the bond request in chambers. During the conference, undersigned counsel urged the grounds stated in the Motion to Set Bond and that evidence of the alleged probation violation was "thin" as Det. Armendariz's complaint affidavit was difficult to understand, and neither the State nor the El Paso Police Department had any documentary evidence to substantiate the charge—i.e., no probable cause for the arrest and detention. Mr. Montoya opposed granting of the bond.

18. Judge Barill then stated she would not hold a bond hearing until Ms. Quinones was extradited to El Paso, Texas.

19. Thereafter, Ms. Quinones was extradited to El Paso, Texas and remained in custody until December 1, 2019. However, due to bureaucratic inaction and delays by the El Paso County Probation Department, she was unable to return home to Oregon until February 26, 2020.

20. On December 19, 2019, Ms. Quinones lost her position with Family Health Associates in Hermiston, Oregon.

21. On September 1, 2020, Montoya filed a Motion to Dismiss Motion to Revoke and Capias, i.e. a dismissal of the charges against Ms. Quinones, citing as the reason, "Investigation by Social Security Administration Office of Inspector General revealed Defendant filed complaints prior to guardianship and kidnapping conviction." Ex. D attached hereto, Motion to Dismiss Motion to Revoke and Capias, dated September 1, 2020 (emphasis added).

## VIOLATIONS

### COUNT – 1

### Civil Rights Violation: Fourth Amendment—Defendants

### in their Official Capacities

### False Arrest/False Imprisonment

22. Plaintiff hereby incorporates by reference the allegations in paragraphs 1 through 21 herein above as fully set forth in this paragraph.

23. Section 1983 imposes liability on parties who, under color of law, subject a citizen of the United States to the deprivation of any rights, privileges or immunities secured to them by the Constitution and laws of the United States.

24. Plaintiff would show Defendants lacked probable cause[3] to arrest Plaintiff in that the Complaint Affidavit was not supported by probable cause because: **1)** certain of the statements contained in the Complaint Affidavit were false when made or evidence that Defendants Armendariz and Camacho failed to initiate the criminal prosecution in good faith as no reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified, including that i) CAP Investigators "discovered that the DEFENDANT called in the complaint to report the false information to the Social Security Administration, triggering an Administrate [sic] and Criminal Investigation against the REPORTER] … [and] a follow up email was submitted from the Defendant's email, describing in detail the false allegations against the Reporter"; ii) "[t]he U.S. Social Security Administration … was forwarded the complaint made by the

---

[3] "Probable cause exists when the totality of the circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).

DEFENDANT and began the investigation into the REPORTER at which point the [EPPD] was alerted and consequent investigation was initiated"; iii) "The complaint from the [SSA] was sent to the [EPPD] as the DEFENDANT was a party to a violent offense that … was investigated, presented and prosecuted by the [EPPD] and the El Paso County District Attorney's Office"; and iv) "The False Statement to Federal Special Investigators are an attempt to seek monetary gain, and the false statements are material to the investigation into the death benefits of William Wolff, the DEFENDANT'S ex-husband, and the father of H.W."

25. In fact, Det. Armendariz's averment "[CAP Investigators] *discovered* that on August 31, 2019 DEFENDANT called in the complaint to report the false information to [SSA]" and "[a] follow up email was submitted from the DEFENDANT'S email, *describing in further detail the false allegations*" could not have been known to Camacho and Armendariz on October 30, 2019 because the Motion to Dismiss clearly evidences that, thereafter, "[i]nvestigation by Social Security Administration Office of Inspector General revealed Defendant filed complaints prior to guardianship and kidnapping conviction." Ex. A (emphasis added); Ex. D. Stated another way, considering that on October 30, 2019, Camacho and Armendariz did not possess the facts substantiating what they claim to have "discovered," i.e., of a phone call or that "a follow up email was submitted … further detailing the false allegations;" these statements purporting to have relied on such facts were false, or at best as yet unverified, such that no reasonable police officer could reasonably proceed, *one day after receiving the initial report*, to swear to and file the Complaint Affidavit—seeking the immediate arrest of Ms. Quinones—when it

9

took another eleven months for Montoya to conclude there was no evidence substantiating the offense.

26.     Additionally, Det. Armendariz's averment that the SSA "forwarded the complaint made by the DEFENDANT and began the investigation at which point the El Paso Police Department was alerted *and a consequent investigation was initiated*" was similarly untrue as CAP officers had in truth undertaken no investigation at that time. Consequently, they lacked sufficient probable cause to initiate prosecution and seek Ms. Quinones' arrest.

27.     Rather, the Complaint Affidavit reveals Armendariz and Camacho proceeded based on personal bias and the pretext that Ms. Quinones "*was a party to a violent offense that was investigated, presented and prosecuted by the El Paso Police Department and El Paso County District Attorney's Office*" (Ex. A, emphasis added), namely the murder case against Ms. Quinones' father—on which case they were the lead investigators. In fact, after the trial, and close in time to filing these charges, Camacho and Armendariz publicly stated their personal opinion that Ms. Quinones was involved. In point of fact, however, Armendariz and Camacho had long since concluded (on February 4, 2016) in their investigation in *Mr.* Quinones' case that Ms. Quinones was **not involved** as "there was no evidence that Javier [Quinones] acted with another and in his confession he did not implicate anyone else." Ex. B.

28.     Furthermore, the statement contained in the Complaint Affidavit that the Reporter, Sonya Wolff, was "awarded temporary custody of H.F. [sic] from January … 2016 – January 2019," is false.

29.     Therefore, Armendariz and Camacho's further conclusion and Armendariz's averment that "the complaints being filed by the DEFENDANT to the US Social Security Administration are clearly fictitious and are made in efforts to deceive and initiate an investigations [sic] on consistent proven lies the DEFENDANT has fabricated" are without factual basis.

30.     Additionally, the above statements contained within the Complaint Affidavit served to taint the review by Magistrate Priddy "an independent intermediary" such that her conclusion that probable cause existed for the arrest was vitiated and her review does not serve to break the chain of causation for false arrest or otherwise insulate Armendariz and Camacho.[4]

31.     The above-described actions by Defendants deprived Plaintiff of rights, privileges and immunities secured to her by the Constitution and laws of the United States and thereby violated 42 U.S.C. § 1983.

32.     Plaintiff would show that the Defendants, in their official capacities, i) directed, requested, or participated in her arrest or detention, ii) such arrest was without Plaintiff's consent, and iii) the arrest or detention was without legal authority or justification, namely without probable cause.

33.     Defendants' actions described above were the proximate, producing, or cause in fact of damage to Plaintiffs.

34.     Defendants' actions individually and in concert, and combination, as described above were a proximate and producing cause of damage to Plaintiff for which Plaintiff requests Defendants be held jointly and severally liable.

---

[4] *Deville*, 567 F.3d at 170.

35. Defendants' actions were either intentional or done with reckless or callous disregard for Plaintiff's rights entitling her to punitive damages.

## CONDITIONS PRECEDENT

36. All conditions precedent to the Plaintiff's causes of action have occurred or been performed.

## JURY DEMAND

37. Plaintiff requests a jury trial.

## REMEDIES AND DAMAGES

38. Defendants' actions have resulted in additional, unspecified damages which Plaintiff seeks judgment against Defendants:

   a. actual damages;

   b. consequential damages;

   c. lost wages and benefits in the past;

   d. punitive damages;

   e. attorney's fees as damages for Plaintiff's defense of the charges leading to her arrest and detention and in defense of the Motion to Revoke;

   f. attorney fees pursuant to 42 U.S.C. § 1983; or as provided by applicable law;

   g. interest;

   h. court costs.

   WHEREFORE, premises considered, Plaintiff prays that upon final hearing hereof that Plaintiff recover her damages, attorney's fees and costs, pre and post judgment

```
```

interest and such other and further relief either at law or in equity, to which she may be justly entitled.

        Respectfully submitted,

        Troy C. Brown

        By:  /s/*Troy C. Brown*
        Troy C. Brown
        Attorney for Plaintiff
        1074 Country Club Rd.
        Suite B-4
        El Paso, Texas 79932
        (915) 543-9669
        (888) 922-3353 fax
        State Bar No. 00783735
        troy@tcblegal.com

## **CERTIFICATE OF SERVICE**

I, Troy C. Brown hereby certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to all parties on this 7th day of February.

        /s/*Troy C. Brown*
        **Troy C. Brown**